UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS COMPANIES, INC.,<br><br>                              Plaintiff,<br><br>   vs.<br><br><br><br>MITEL TECHNOLOGIES, INC., *et al.*,<br><br>                              Defendants. | CASE 12-CV-2818 W (MDD)<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT MITEL TECHNOLOGIES' MOTION TO DISMISS [DOC. 4]; (2) DENYING DEFENDANT MITEL TECHNOLOGIES' MOTION TO STRIKE [DOC. 5]; AND (3) GRANTING DEFENDANT JOHN GARDNER'S MOTION TO DISMISS [DOC. 13.] |

Pending before the Court are Defendant Mitel Technologies' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion to strike pursuant to Fed. R. Civ. P. 12(F).  (*Mitel's MTD* [Doc. 4]; *Mitel's MTD Reply* [Doc. 23]; *Mitel's MTS* [Doc. 5]; *Mitel's MTS Reply* [Doc. 21].)  Plaintiff Express opposes.  (*Express' MTD Opp'n* [Doc. 25]; *Express' MTS Opp'n* [Doc. 19].)  Also pending before the Court is Defendant John Gardner's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).  (*Gardner's MTD*

[Doc. 13]; *Gardner's Reply* [Doc. 31].)  Plaintiff Express opposes.  (*Express' Opp'n Gardner's MTD* [Doc. 26].)  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Mitel Technologies' motions and **GRANTS** Defendant Gardener's motion.

I.   BACKGROUND

According to the First Amended Complaint, Plaintiff Express Companies Inc. ("Express") has been offering safety training courses and products related thereto since 1993. (*FAC* [Doc. 1-2] ¶¶12, 13.) Since 1997, Express has been advertising and selling its products and services on the Internet. (*Id.* ¶ 13.) Express "has no brick-and-mortar" stores and therefore "relies entirely on the Internet and telephone for the sales of its products and services.  As such, reliable, consistent, and fast Internet and voice capabilities are of utmost importance" to the company.  (*Id.* ¶ 14.)

In early 2009, Mitel Technologies, Inc. ("Technologies") and Mitel Leasing, Inc. ("Leasing") (collectively, "MITEL"), telecommunications providers, approached Express and "solicited its business for Express' telecommunications platforms." (*FAC* ¶ 15, 16.) Express ultimately bought the "Mitel TotalSolution Program" from MITEL.  (*FAC* ¶ 20.) Express entered into two agreements in connection with the "Mitel TotalSolution Program," one with Technologies and one with Leasing.

Despite MITEL's promises, the "TotalSolution" that Express purchased never lived up to Express' expectations. (*See generally FAC*.)  In light of numerous disagreements about the performance of all parties under the agreement, both parties began to get their lawyers involved.  In April 2011, Express advised its corporate counsel Mr. T.C. Johnson to contact Defendant John L. Gardner, counsel for MITEL, who had been involved in discussions between Express and MITEL. (*FAC* ¶ 47.) Mr. Johnson sent Mr. Gardner an email, requesting a legible copy of the MITEL contract. (*Id.* 48-49.)  Mr. Gardner agreed to send a copy, but never did.  (*Id.*)

Eventually, litigation was initiated by both parties. In June 2011, Express was served with a lawsuit filed by MITEL in Texas on May 13, 2011. (*FAC* ¶ 50.) John L. Gardner was attorney of record for MITEL. (*Id.*) This matter was later settled.

Express filed a Complaint against Technologies, Leasing, and Mr. Gardner in California state court. On September 18, 2012, Express filed its First Amended Complaint, which is the operative complaint. The FAC alleges the following twelve causes of action against Defendants: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) breach of warranty; (4) deceit; (5) misrepresentation; (6) negligent misrepresentation; (7) negligence; (8) negligent hire; (9) wrongful use of civil proceedings (malicious prosecution; (10) abuse of process; (11) trespass to chattel; and (12) conversion. On November 12, 2012, Defendants removed the case to this Court. (*Notice of Removal* [Doc. 1].) On the same day, Technologies moved to dismiss the Complaint, and in the alternative, to strike portions of the complaint. (*Mitel's MTD* [Doc. 4]; *Mitel's MTS* [Doc. 5].) On November 28, 2012, John Gardner followed suit and filed a motion to dismiss. (*Gardner's MTD* [Doc. 13].) On the same day, Leasing filed a 12(b)(3) motion. (*MTD* [Doc. 15].) On September 30, 2013, the Court ordered granted Leasing's 12(b)(3) motion, leaving Technologies and Gardner as the only named Defendants. (*See Order Granting 12(b)(3) Motion* [Doc. 34].)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe

the complaint in a light most favorable to the non-moving party." <u>Vasquez v. L.A. Cnty.</u>, 487 F.3d 1246, 1249 (9th Cir. 2007).

However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007). Instead, the allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

### B.     Motion to Strike

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike must be filed within twenty-one days after the filing of the pleading under attack. <u>Id.</u> However, the court may consider an untimely motion to strike if appropriate because the court may act on its own motion. <u>See id.</u>

The purpose of a motion to strike is to avoid wasted time and money litigating spurious issues by dispensing with them before trial. <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (quoting <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993)). However, motions to strike are generally disfavored, and "usually denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." <u>Travelers Cas. & Sur. Co. of Am. v. Dunmore</u>, 2010 WL 5200940, *3 (E.D. Cal. 2010).

1     Redundant matter is the needless repetition of assertions. Travelers Cas. & Sur.
2  Co. of Am. v. Dunmore, 2010 WL 5200940, *3 (E.D. Cal. 2010). "Immaterial matter
3  is that which has no essential or important relationship to the claim for relief or the
4  defenses being plead." Whittlestone, 618 F.3d at 974 (quoting Fogerty, 984 F.2d at
5  1527). "Impertinent matter consists of statements that do not pertain, and are not
6  necessary, to the issues in question." Id. (quoting Fogerty, 984 F.2d at 1527).
7  "Scandalous matters are allegations that unnecessarily reflect on the moral character
8  of an individual or state anything in repulsive language that detracts from the dignity
9  of the court." Consumer Soultions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1021
10 (N.D. Cal. 2009) (quoting Corbell v. Norton, 224 F.R.D. 1, 5 (D.D.C. 2004)) (internal
11 punctuation omitted).
12    The court may not strike from the pleadings any disputed and substantial factual
13 or legal issue. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir.
14 2010). Any doubt about whether the matter under attack raises a factual or legal issue
15 should be resolved in favor of the non-moving party. See id.
16
17    C.    **Motion to Dismiss for Lack of Personal Jurisdiction**
18    Rule 12(b)(2) permits the court to dismiss a claim upon a motion to dismiss for
19 "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). While the defendant is the
20 moving party, the plaintiff is the party invoking the court's jurisdiction and thus bears
21 the burden of proof. When a district court does not hold an evidentiary hearing, the
22 plaintiff need only show a prima facie case for personal jurisdiction. Bauman v.
23 DaimlerChrysler Corp., 644 F.3d 909, 919 (9th Cir. 2011) (citing Doe v. Unocal Corp.,
24 248 F.3d 915, 922 (9th Cir. 2001)). The plaintiff's verison of the facts is taken as true
25 when not directly controverted. Unocal Corp., 248 F.3d 922.
26 //
27 //
28 //

III.  DISCUSSION

    A.    Mitel Technologies' Motion to Dismiss

        1.    Breach of Contract

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008). "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Monaco v. Bear Stearns Residential Mortgage Corp., 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." Id. (citing Bay Cities Paving & Grading, Inc. V. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993). "[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

Here, Technologies argues that Express' breach of contract claim "is uncertain in its entirety, and fails as a result . . ." because "[Express] improperly refers to Technologies and Leasing as a single party." (*Mitel's MTD* 4-5.) This, according to Technologies, renders the complaint void of factual peadings "that identify any alleged breach by Technologies." (*Id.*) The Court disagrees.

As Express rightfully points out, its breach of contract claim is "directed at all parties including specifically [Technologies]." (*Opp'n* 4.) The fact that these claims were made against Technologies and Leasing as the collectives "MITEL" or "defendants" does not render them "uncertain" or insufficient. Indeed, Express has plead every element of a breach of contract claim: (1) existence of a contract between Technologies ane Express (*FAC* ¶¶ 20, 24); (2) Express performed on the contract (*Id.* ¶ 75); (3) Technologies breached the agreement (*Id.* ¶¶ 15, 30-33; 34, 38, 41, 76); and (4) damages (*Id.* ¶ 77.)

In light of the foregoing, Technologies' motion to dismiss is **DENIED** on this ground.

### 2.     Breach of Covenant of Good Faith and Fair Dealing

Technologies next argues that Express' cause of action for breach of the covenant of good faith and fair dealing fails "for the same reason its breach of contract claim fails–plaintiff fails to adequately plead the actions of Technologies that allegedly amount to a breach of the covenant of good faith and fair dealing." (*Mitel's MTD* 5-6.) As explained above, this argument is unpersuasive. Furthermore, contrary to Technologies suggestion, plaintiff has plead that it fulfilled its obligations under the contract. (*Id.* 6; *FAC* ¶ 75.)

In light of the foregoing, Technologies' motion to dismiss is **DENIED** on this ground.

### 3.     Breach of Warranty

A cause of action for breach of warranty must involve a sale of goods. Cal. Com. Code §§ 2313-15. The term "goods" encompasses "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . , and things in action." Id. § 2105. An action for breach of warranty will not lie where there has been only the furnishing of services. Gautier v. General Tel. Co., 234 Cal. App. 2d 302, 307 (1965).

In determining whether an agreement is for the sale of goods or the provision of services, courts look to the "essence" of the agreement. When service predominates, the incidental sale of personal property does not alter the basic transaction. Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1186 (2008).

Here, Technologies suggests that its agreement with Express is solely for the provision of services, not goods. (*Mitel's MTD* 6.) Therefore, Technologies suggests that Express' claims of implied warranties of merchantability and fitness for a particular purpose fail. (*Id.*) However, the Court is not convinced that services predominate over the sale of goods in this situation, since the agreement that Technologies drafted expressly warrants that goods, namely, "the Equipment, System Software and/or

Related Software," will be free of "defective parts, programming and workmanship." (*Ex. A* p. 27 ¶ 13.) Thus, Technologies' argument fails.

Technologies also argues that the breach of warranty is "uncertain as it includes allegations concerning both express and implied warranties." (*Mitel's MTD* 6.) However, nothing is uncertain about Express' warranty claims. "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986). Express has plead the exact terms of the warranty (*FAC* ¶¶ 84, 85; *Ex. A.* p. 27 ¶ 13). Express has also plead breach which proximately caused injury (*FAC* ¶ 91). The only element not specifically pled is reliance. This omission is not fatal as reliance can be reasonably inferred from the tenor and totality of the allegations in the complaint. See Shurpin v. Elmhirst, 148 Cal. App. 3d 94, 98 (1983).

Moreover, Express has plead a valid cause of action for breach of implied warranty. The elements for breach of implied warranty of fitness for a particular purpose are: (1) the buyer intended to use the product for a particular purpose; (2) the seller had reason to know this; (3) the buyer relied on the seller's judgment to select suitable goods for that purpose; (4) the seller had reason to know that the buyer was relying on seller in this way; and (5) the product failed to suit buyer's purpose and subsequently damaged the buyer. Keith v. Buchanan, 173 Cal. App. 3d 13, 25 (1985). Again, the only element which Express has not specifically plead is reliance, but as explained above, the totality of the allegations reasonably permit an inference of reliance.

Therefore, Technologies' motion to dismiss is **DENIED** on this ground.

//
//
//
//
//

### 4. Fraud and Misrepresentation

A claim for fraud[1] or intentional misrepresentation requires (1) a representation, (2) falsity, (3) knowledge of falsity, (4) intent to deceive, and (5) reliance and resulting damages. Cooper v. Equity Gen. Ins. Co., 219 Cal. App. 3d 1252, 1262 (1990). Complaints alleging fraud must meet the pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus imposes two separate requirements on complaints alleging fraud. First, a plaintiff must specifically identify the allegedly fraudulent statements or acts of fraud. Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). This requires the plaintiff to plead evidentiary facts including the dates, times, places and person associated with each misrepresentation or act of fraud. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548-49 n.7 (9th Cir. 1994) (en banc) (superseded by statute on other grounds); Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

Second, where the act of fraud is based on a misrepresentation, the plaintiff must demonstrate that the statement was false or misleading at the time it was made. GlenFed, 42 F.3d at 1549. As the Ninth Circuit explained, "often there is no reason to assume that what was true at the moment plaintiff discovers was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false." Id. at 1549. For this reason, "a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made, [which] can be done most directly by pointing to

---

[1] Express' fourth cause of action is for "false promise [deceit]." Express' fifth cause of action is for "misrepresentation." The elements of fraud or intentional misrepresentation give rise to the tort action for deceit in California. City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 839 (9th Cir. 2004). Thus, these two claims are essentially identical. Thus, the Court will analyze the "false promise [deceit]" and "misrepresentation" claims as fraud clams.

inconsistent contemporaneous statements or information ... which were made by or available to the defendants." Id. at 1549.

The particularity requirement serves four central purposes: it (1) "prevents the filing of a complaint as a pretext for the discovery of unknown wrongs," (2) "ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong," (3) "protects potential defendants – especially professionals whose reputations in their fields of expertise are most sensitive to slander – from the harm that comes from being charged with the commission of fraudulent acts," and (4) "prohibit[s] a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (internal citations omitted).

Here, there is no doubt that Express has plead numerous representations by Technologies. (*See, e.g., FAC* ¶¶ 19, 21, 24, 25, 30, 32, 33, 43.) However, Express fails to explain which of these representations are subject to its fraud claim. It is not enough to generally allege that "MITEL and its agents knowingly and willfully misrepresented the nature of and sold products and services to EXPRESS that were not suited to EXPRESS' expressly expressed business needs; and then knowingly and willfully misrepresented the terms and bases of said agreements by methods including simplying denying that they said what they had said, although they had said it in writing on more than one occasion." See GlenFed,, 42 F.3d at1548-49 n.7. Nor does Express plead any facts demonstrating that these representations were false at the time they were made. See id. at 1549. Moreover, Express does not plead facts in support of its claim that "MITEL and its agents, at the time of making the representations, knew them to be false or did not have a reasonable belief in their truth." (*FAC* ¶ 104.) In addition, Express pleads no facts to support its claims that Technologies had an "intent to deceive" or the Express relied on Express' misrepresentations. The absence of such factual allegations is fatal to Express' fraud claims.

In light of the foregoing, the Court **GRANTS** Technologies' motion to dismiss with respect to Express' deceit and misrepresentation causes of action **WITH LEAVE TO AMEND**.

### 5. Negligent Misrepresentation

A claim for negligent misrepresentation is identical to a claim for fraud of intentional misrepresentation except plaintiff need not show defendant knew its representations were false, only that defendant lacked reasonable grounds to believe the representation was true. Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

Technologies moves to dismiss this claim on the same grounds it moves to dismiss Express' fraud claims. Express bases its opposition on the fact that it validly stated a cause of action for intentional misrepresentation. As explained above, this is not the case. Because Express' opposition hinges on the premise that its intentional misrepresentation claims are valid, and they are not, the Court **GRANTS** Technologies' motion to dismiss with respect to Express' negligent misrepresentation cause of action **WITH LEAVE TO AMEND**.

### 6. Negligence and Negligent Hiring

Technologies has moved to dismiss Express' negligence and negligent hiring claims, and Express does not oppose. Instead, Express requests dismissal of these claims without prejudice. Therefore, the Court **GRANTS** Technologies motion to dismiss with respect to Express' negligence and negligent hiring causes of action **WITHOUT PREJUDICE**.

### 7. Malicious Prosecution

"To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's

favor; (2) was brought without probable cause; and (3) was initiated with malice." Bertero v. National General Corp., 13 Cal. 3d 43, 50 (1974).

Express claims that MITEL filed suit in Texas on May 13, 2011, which establishes the first element of the claim for purposes of this motion. (FAC ¶ 51.) Technologies' argument that Express failed to "plead facts demonstrat[ing] Technologies brought the referenced Texas lawsuit, or that the same was filed at its discretion" is contradicted by Express' claims that Technologies and Leasing were working in concert. (*Mitel's MTD* 13-14; FAC ¶ 16, 65, 66.) It can be reasonably inferred from the FAC that Express is suggesting that MITEL directed Leasing to file suit against Express. Express has also sufficiently alleged the prior action was a favorable termination in its favor, as a voluntary dismissal by Plaintiff in a civil action is considered a favorable termination which will support an action for malicious prosecution. MacDonald v. Joslyn, 275 Cal. App. 2d 282, 289 (1969).

In addition, Express has plead that the civil case was brought without probable cause (FAC ¶¶ 53-59, 65) and with malice (*Id.* ¶¶ 65, 66). Technologies' argument that the Texas suit was filed due to Express' failure to pay completely ignores Express' allegations that Technologies was contractually bound to provide notice of default before bringing a suit.

Therefore, Technologies' motion to dismiss is **DENIED** on this ground.

### 8. Abuse of Process

"Abuse of process is not just another name for malicious prosecution. Simply filing or maintaining a lawsuit for an improper purpose (such as might support a malicious prosecution cause of action) is not abuse of process." Binda v. Rosen, 19 Cal. App. 4th 27, 40 (1993). Malicious prosecution concerns "a meritless lawsuit" and abuse of process concerns "the misuse of the *tools* the law affords litigants once they are in a lawsuit." Id. Here, there are no allegations of misuse of tools of litigation. Instead, Express claims that the filing of the lawsuit itself is the abuse of process. (FAC ¶ 137-139.) As explained above, this is insufficient. Therefore, the Court **GRANTS**

Technologies motion to dismiss with respect to Express' abuse of process cause of action **WITH LEAVE TO AMEND**.

### 9. Trespass to Chattel

In cases of interference with possession of personal property **not amounting to conversion**, an owner of personal property may recover under a trespass cause of action. Jamgotchian v. Slender, 170 Cal. App. 4th 1384, 1400-01 (2009); Zaslow v. Kroenert, 29 Cal. 2d 541, 551 (1946). Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1566 (1996).

Here, Express has claimed that "plaintiff was dispossessed of its personal property including longstanding telephone numbers." (*FAC* ¶ 143.) Permanent dispossession of property gives rise to a claim for conversion, which supersedes Express' claim for trespass. See Zaslow, 29 Cal. 2d at 551. Therefore, the Court **GRANTS** Technologies motion to dismiss with respect to Express' trespass to chattel claim **WITH LEAVE TO AMEND**.

### 10. Conversion

The basic elements of the tort of conversion are (1) the plaintiff's ownership or right to possession of personal property; (2) defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998).

Technologies argues that Express' conversion claim fails because the FAC "does not contain facts that establish plaintiff owned the telephone numbers, or that it had a right of possession to the same, nor does it include facts that evidence an intentional tort on the part of Technologies." However, the FAC does contain allegations that Express owned the telephone numbers. (*FAC* ¶ 143.) From those same allegations it is easily inferred that Express is asserting a right of possession of those telephone

numbers. (*Id.*) In addition, the FAC also claims that "MITEL, without the consent or knowledge of EXPRESS, transferred EXPRESS' phone numbers to itself." (*FAC* ¶ 72.) It is blatantly obvious from this allegation that Express is claiming that Technologies transferred these numbers intentionally.

Therefore, Technologies' motion to dismiss is **DENIED** on this ground.

### 11. Punitive Damages

Technologies moves to dismiss Express punitive damage claims because the FAC is "void of specific facts evidencing malice, oppression or fraud" and "there are absolutely no facts that would support the conclusion any of the acts complained of were done with the knowledge or under the direction of corporate officials having power to bind Technologies." (*Mitel's MTD* 17). Express argues that a punitive damage claim is not a proper target of a 12(b)(6) motion. (*Express' Opp'n* 15). Express then argues that since its claim for fraud is adequately plead, its punitive damages claim is necessarily adequately plead.

First, Express' claim that a punitive damages claim is not subject to a 12(b)(6) motion is contradicted by Kelley v. Corrections Corp. of America, 750 F. Supp.2d 1132, 1146-47 (E.D. Cal. 2010). Second, the Court has dismissed Express' fraud claim as insufficient. Therefore, Express has provided no valid argument to refute Technologies motion to dismiss their punitive damages claim. In light of the foregoing, the Court **GRANTS** Technologies motion to dismiss with respect to Express' punitive damages claim **WITH LEAVE TO AMEND**.

### B. Mitel's Motion to Strike

Technologies also moves to strike portions of the FAC. However, for all of the allegedly objectionable portions of the FAC that Technologies sites, it fails to provide any substantive explanation as to why the allegations are "immaterial," "irrelevant," "impertinent," or "scandalous." Instead, Technologies' motion, merely provides a laundry list of allegations from the FAC and legal conclusions as to why the claims

should be stricken. This approach completely ignores the moving party's burden of explaining how they reached their conclusions. Indeed, the motion is completely devoid of any substantive analysis as to why any of the claims should be stricken. Thus, the Court **DENIES** Technologies' motion to strike.

### C. John Gardner's Motion to Dismiss For Lack of Personal Jurisdiction

A court may exercise personal jurisdiction over a non-resident only if the defendant has sufficient "minimum contacts" with the forum state and it is reasonable for the defendant to defend in that jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Jurisdiction can be general or specific. Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 536 (2000). General jurisdiction results where the defendants's contacts with the forum state are so "systematic and so continuous as to make it consistent iwth traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum, even where the cause of action is unrelated to the contacts." Id. (citing Calvert v. Huckins, 875 F. Supp. 674, 677 (E.D. Cal. 1995). "Specific jurisdiction results when the defendant's contacts with the forum state, though not enough to subject the defendant to general jurisdiction of the forum, are sufficient to subject the defendant to suit in the forum on a cause of action related to or arising out of those contacts." Sonora Diamond, 83 Cal. App. 4th at 536.

It is well settled that a non-resident defendant my be subjected to specific jurisdiction if the following three requirements are met:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

Gordy v. Daily News, L.P., 95 F.3d 829, 831-32 (9th Cir. 1996).

Mr. Gardner moves to dismiss Express' FAC against him for lack of personal jurisdiction. Specifically, Gardner argues that there is no general or specific jurisdiction

over him. (*Gardner's MTD* 5-7, 7-13.) Express does not dispute that the Court has no general jurisdiction over him. Instead, Express argues that the Court has specific jurisdiction over Gardner because Gardner's alleged intentional torts are a basis for personal jurisdiction. (*Express' Opp'n Gardner's MTD* 7-10.) The Court disagrees.

In support of this argument, Express relies <u>Calder v. Jones</u>, 465 U.S. 783 (1984), and <u>Gordy</u>, 95 F.3d 829. However, Express fails to explain how the law of those cases applies to the case at bar. In each of those cases, the courts found that a court can exert personal jurisdiction over a foreign resident who commits the intentional tort of defamation by producing tortious written articles to be published in the forum state. The facts here are markedly different, as Gardner is alleged to have maliciously prosecuted a case against Express, and abused process, in Texas. Moreover, Express fails to explain how Gardner's alleged malicious prosecution and abuse of process, which allegedly occurred in Texas, shows purposeful availment to the privilege of conducting activities in California. This is insufficient to carry Express' burden of making out a prima facie case for jurisdiction.

In light of the foregoing, the Court **GRANTS** Gardner's motion to dismiss.

//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART AND DENIES IN PARTY** Defendant Technologies' motion to dismiss **WITH LEAVE TO AMEND**. Express shall file its Second Amended Complaint <u>**on or before October 28, 2013**</u>. It is **FURTHER ORDERED** that Technologies' motion to strike is **DENIED. FURTHER**, Mr. Gardner is **DISMISSED** from this action pursuant to Rule 12(b)(2).

**IT IS SO ORDERED.**

DATED: September 30, 2013

_____
Hon. Thomas J. Whelan
United States District Judge